VINCENT VENTURA, as Administrator of the Estate of ANTHONY VENTURA, Deceased, Appellant, v CONSOLIDATED EDISON COMPANY, INC., et al., Respondents, et al., Defendants. (Action No. 35.) (And 41 Other Actions.)

First Department, December 19, 1978

### APPEARANCES OF COUNSEL

*Norman E. Frowley* of counsel *(Abraham Fuchsberg* with him on the brief; *Fuchsberg & Fuchsberg,* attorneys), for appellant.

*Joseph D. Ahearn* of counsel *(Ernest J. Williams,* attorney), for Consolidated Edison Company, Inc., respondent.

*Irving Cohen* of counsel *(Bernard Burstein* with him on the brief; *Allen G. Schwartz, Corporation Counsel),* for City of New York, respondent.

### OPINION OF THE COURT

SULLIVAN, J.

The issue before us is whether loss of consortium is a pecuniary injury and thus compensable in a wrongful death action. We conclude that it is.

On December 11, 1970, a gas explosion occurred in lower Manhattan, as a result of which, that same day, Anthony Ventura, an employee of the Ann Street Barber Shop, located near the blast, died. At his death decedent was 64 years of age, earning approximately $125 per week, and was survived by his widow, age 54 and 4 children, aged 33, 27, 25 and 11.

Plaintiff Vincent Ventura was appointed administrator of the deceased's estate and on February 16, 1971, he filed a notice of claim with the City of New York on behalf of the estate, alleging that damages in the sum of $250,000 were "incurred by the distributees of the estate of the deceased due to his wrongful death" and personal injuries. A comptroller's hearing was held on February 9, 1972.

A summons and complaint, designating the administrator as the sole plaintiff, was served upon a series of defendants, including the City of New York and Consolidated Edison on February 16, 1972 and January 31, 1973, respectively. The complaint asserted causes of action for wrongful death and conscious pain and suffering.

After trial Consolidated Edison and the City of New York, along with other defendants, were found liable, and an interlocutory judgment was entered on January 31, 1975. On appeal this court remitted the matter for a new trial on the issue of the city's liability and, after verdict therein, for an apportionment of damages among the defendants held liable. (Gannon Personnel Agency v City of New York, 57 AD2d 538.)

On July 28, 1977, plaintiff moved for an order to permit amendment of the complaint pursuant to CPLR 3025 (subd [b]), to include a separate action on behalf of the decedent's widow, individually, for loss of consortium. Plaintiff relied on a 1976 Second Department case (Martins v Ford, 53 AD2d 887) in arguing that a viable claim exists for loss of consortium in a wrongful death action. In his affidavit plaintiff's attorney stated that the original pleading would not embrace damages for loss of consortium, and that amendment was necessary "so as to solely accomplish this change and amendment."

The city opposed the motion on four grounds, with its principal argument that there can be no recovery for loss of a decedent's society in a wrongful death action. The city also responded that the time for the widow to bring such an action had expired, that the notice of claim failed to allege an action for loss of consortium, and that the city was prejudiced by

plaintiff's seven-year delay in moving for this relief. The essence of the city's opposition was that plaintiff's motion was an attempt to start a separate and distinct action, not alleged in the notice of claim and barred by the Statute of Limitations.

Defendant Consolidated Edison opposed the motion and cross-moved for summary judgment dismissing the complaint against it upon the ground, asserted as an affirmative defense, in its answer, that the cause of action for wrongful death was barred by the Statute of Limitations.

Trial Term denied the motion to amend, and granted summary judgment for Consolidated Edison. Relying on EPTL 5-4.3 the court stated that it was "not persuaded that loss of consortium is an element of a wrongful death action", and that the proposed amendment was "an attempt to start a separate and distinct action".

Subsequently, plaintiff moved for reargument, urging that loss of consortium was merely an element of damages sustained by the widow, in a wrongful death action, and that it was not a separate cause of action. Reargument was denied.

EPTL 5-4.3 reads:

"§ 5-4.3 Amount of recovery

"The damages awarded to the plaintiff may be such sum as the jury or, where issues of fact are tried without a jury, the court or referee deems to be fair and just compensation for the *pecuniary injuries* resulting from the decedent's death to the persons for whose benefit the action is brought. In every such action, in addition to any other lawful element of recoverable damages, the reasonable expenses of medical aid, nursing and attention incident to the injury causing death and the reasonable funeral expenses of the decedent paid by the distributees, or for the payment of which any distributee is responsible, shall also be proper elements of damage. Interest upon the principal sum recovered by the plaintiff from the date of the decedent's death shall be added to and be a part of the total sum awarded." (Emphasis added.)

■ ■ A cause of action for wrongful death is a legislative creation (EPTL 5-4.1), and the courts, construing the statute strictly, have been reluctant to extend the remedy beyond the literal terms of the statute authorizing it. For instance, the Court of Appeals ruled that no common-law action exists for wrongful death, and that the Statute of Limitations could not

be extended beyond two years, as provided by statute. *(Ratka v St. Francis Hosp.,* 44 NY2d 604, 610.)

In 1968, the Court of Appeals eradicated the distinction between a husband and wife in their respective rights to recover for loss of consortium in a personal injury action. *(Millington v Southeastern Elevator Co.,* 22 NY2d 498, 504.) The court's choice of language was significant *(supra,* p 507): "It is also contended that the 'sentimental' damages such as the diminution of the value of her husband's society and affection and the deprivation of sexual relations and the attendant loss of child-bearing opportunity are too personal, intangible and conjectural to be measured in pecuniary terms by a jury. This argument has no merit. The logic of it would also hold a jury incompetent to award damages for pain and suffering." Although the thrust of the decision was to permit a wife to recover for the same injury her husband could in his derivative action, i.e., loss of society, it is noteworthy that the court pointedly rejected any intimation that loss of consortium was not pecuniarily measurable.

The Court of Appeals had long before discounted the argument that sentiment was impossible to measure, when it allowed damages to children who had been deprived of parental services due to wrongful death, because they were owed a "duty of nurture". *(Tilley v Hudson Riv. R. R. Co.,* 24 NY 471, 476.)

Concededly, there is a difference between the "duty of nurture" owed to children by their parents, and consortium between spouses. But the importance of *Tilley (supra)* is that the court compensated an injury not explicitly provided for in the wrongful death statute. Query: Should we continue to deny compensation for another injury which also arises from damage to the family relationship, especially when that injury has a cognizable pecuniary value in a personal injury action? The time has come to recognize the pecuniary value of the society which a husband and wife provide for each other as part of the wife's compensation for the wrongful loss of her husband.

The concept that loss of consortium is compensable in a wrongful death action, although alien to New York jurisprudence, has found wide, as well as in some instances, long-standing, acceptance in other jurisdictions. For example, in 1899 the Florida Supreme Court held that a widow's pecuni-

ary loss included "the loss of the comfort, protection, and society of the husband in light of all the evidence in the case relating to the character, habits and conduct of the husband as husband, and to the marital relations between the parties at the time of and prior to his death." *(Florida Cent. & Peninsular R. R. Co. v Foxworth,* 41 Fla 1, 75.) The United States Supreme Court has noted that "[a] clear majority of States * * * either by express statutory provision or by judicial construction, permit recovery for loss of society." *(Sea-Land Servs. v Gaudet,* 414 US 573, 587.) In *Sea-Land (supra,* p 585) the court permitted recovery for loss of society, defining "society" as the "broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection."

Recently, New York courts have also allowed damages for loss of consortium. In *Lehman v Columbia Presbyt. Med. Center* (93 Misc 2d 539) the court permitted amendment of the complaint to add a separate cause of action for loss of consortium. As already noted, the Second Department, in *Martins v Ford* (53 AD2d 887) concluded that a plaintiff widow, suing individually and as administratrix of the estate of her husband, had a valid claim for loss of consortium.

The basic arguments against compensating loss of consortium in a statutory action are either that sentimental injury is too speculative for recovery, or that the proper forum for authorizing such relief should be the Legislature. These arguments are easily disposed of. Measuring sentiment in a wrongful death action is no more difficult than it is in a personal injury action, a problem resolved by the Court of Appeals in *Millington v Southeastern Elevator Co.* (22 NY2d 498, *supra)* as noted earlier. Nor is it all that evident that the determination for the allowance of compensable loss is within the exclusive province of the Legislature. Until 1868 in New York it was not believed that children had a pecuniary interest in their personal relationship with their parents. The decision in *Tilley v Hudson Riv. R. R. Co.* (24 NY 471, *supra)* changed that perception. Until 1968 wives did not have a pecuniary interest in their personal relationship with their husbands. The decision in *Millington (supra)* of course, eradicated that distinction. Times change. The courts should now recognize that a relationship which is measurable in life is also measurable after death. The Legislature's inaction since the decision

in *Millington* 10 years ago does not relegate the judiciary to remaining impervious to an anachronism shorn of all vitality.

Finally, although it is a fact that the widow did not originally sue individually, we do not construe the motion to amend as an attempt to start a distinct cause of action barred by the Statute of Limitations. Rather, the effect of the amendment merely is to permit the inclusion of loss of consortium in calculating pecuniary damages pursuant to statute.

Accordingly, the order, Supreme Court, New York County (GREENFIELD, J.), entered October 25, 1977, which, *inter alia,* denied plaintiff's motion to permit amendment of his complaint to include a cause of action for loss of consortium on behalf of decedent's widow, should be modified, on the law, without costs or disbursements, to the extent of granting plaintiff's motion only to permit service within 30 days of an amended bill of particulars to include loss of consortium, and except as thus modified, the order should be affirmed.

KUPFERMAN, J. P., EVANS, LANE and SANDLER, JJ., concur.

Order, Supreme Court, New York County, entered on October 25, 1977, unanimously modified, on the law, to the extent of granting plaintiff's motion only to permit service within 30 days of the date of entry of this court's order of an amended bill of particulars to include loss of consortium, and except as thus modified, the order is affirmed, without costs and without disbursements.