■ MELITA RIVERA, as Administratrix of the Estate of RAMON RIVERA, Deceased, Appellant-Respondent, v BRONX-LEBANON HOSPITAL CENTER, Respondent, et al., Defendants, and EHSANOLIAH BENARESH, Respondent-Appellant.—Judgment, Supreme Court, Bronx County, entered December 1, 1977, unanimously reversed, on the law, on the facts and in the exercise of discretion, and the action remanded for a new trial, with costs to abide the event. Appeals from orders entered May 31, 1977 and July 27, 1977, unanimously dismissed, without costs, as subsumed in the judgment and reviewed on the appeal therefrom. On October 1, 1970, deceased, an employee of Bronx-Lebanon Hospital Center (Hospital) was struck by a motorcycle. He was taken to the Hospital at or about 6:00 P.M. in the evening of that day by his son. The examination conducted in the emergency room disclosed multiple fractures of the right lower extremity, including a subtrochanteric· fracture of the right femur. It also indicated a long-standing alcoholic problem, which had resulted in an advanced case of cirrhosis of the liver. He was admitted to the hospital at or about 9:30 that evening. Deceased was a member of Local 1199 (Union). By reason of his membership in the Union, he was entitled to certain benefits from the Union's National Health Fund, which included payment for hospital, surgical and medical treatment in accordance with a prescribed schedule. Accordingly, upon his admission to the Hospital, he was given a semiprivate room and the medical partnership of Hertzberg, Siegel and Biondi was assigned by the Hospital's chief of orthopedic service as his attending surgeons. A CBC (complete blood count) ordered by a resident indicated a deficiency in platelets, a blood substance which plays an important function in blood coagulation. A liver profile was then ordered. The fracture of the neck of the femur required pinning which could be achieved only by an open reduction, so an operation was scheduled for October 5, 1970. Prior to the operation, a discussion was had of the deceased's case between Dr. Phaisal, a resident who had participated in treating the deceased prior to the operation, and Dr. Siegel, who was to perform the surgery. The surgery then proceeded with Dr. Benaresh in charge of anesthesia. On the evening of the day following the operation, the deceased began to hemorrhage internally, a condition which worsened considerably as the days progressed. On October 27, 1970, he died and this action followed. Originally, the suit was brought against the Hospital and Drs. Siegel, Benaresh and Phaisal. Dr. Siegel died prior to service of the

summons and complaint. No one was ever substituted for him. The action was discontinued against Dr. Phaisal prior to the commencement of the trial, leaving only the Hospital and Dr. Benaresh as defendants. At the trial, plaintiff produced an expert who testified that the anesthetic used by Dr. Benaresh, holothane, should not have been used when a liver disease was indicated. He further testified that the performance of surgery without correcting the platelet inadequacy, without a medical consultation, and without obtaining the results of the liver profile, was improper medical practice. These conclusions were disputed at least in part by defendant's witnesses. There was also conflicting testimony with respect to the relationship of Dr. Siegel and the Hospital insofar as concerned the doctor's treatment of deceased. The Hospital contended that Siegel acted solely as a private attending physician. In support of its contention, proof was offered that the doctor had submitted a bill for $1,850 to the Local 1199 National Health Fund, together with an authorization from deceased to make payment. The director of the fund testified that payment in the sum of $487.50 had been made in accordance with its prescribed schedules. Plaintiff, on the other hand, contended that at the time the authorization was submitted to the deceased he was in such condition that he no longer was capable of understanding what he was doing. The trial court correctly charged on the issue of concurrent negligence. However, at the insistence of plaintiff's counsel, he indicated that the Hospital could be held liable only for the actions of its employees, thus lumping together Siegel, the residents and all others who had accorded treatment to the deceased. He also instructed the jury that, if they found in favor of plaintiff and against one or more defendants, they were to return a single verdict against all defendants found to be liable and, should the issue arise, to apportion the amount of the recovery between the defendants in proportion to their contribution to the results. The jury failed to follow the court's instructions. It returned separate verdicts in the death action in favor of plaintiff against the Hospital for $50,000 and against Benaresh for $15,000. On the count for pain and suffering, it found in favor of plaintiff against the Hospital for $25,000 and against Benaresh for $10,000. Thereupon, the Hospital moved to set aside the verdict against it, contending that no proof of negligence on the part of the Hospital personnel had been shown; that the malpractice, if any, had been committed by Dr. Siegel, the private physician of the deceased, or Dr. Benaresh, the private anesthesiologist, or both, and the Hospital bore no responsibility therefor. Plaintiff cross-moved to set aside the verdict on the ground of inadequacy and for a retrial on the issue of damages only. The trial court granted the Hospital's motion and set aside the verdict and dismissed the complaint against it on the theory that the proof indicated that Dr. Siegel was deceased's private attending physician for whom the Hospital bore no responsibility. Somewhat inexplicably, without reducing the verdict, a result which might have been justified in light of plaintiff's meager earnings and the medical testimony that deceased's cirrhotic condition was such that, had the operation been completely successful, his probable life expectancy would have been anywhere from three months to a year, he directed that judgment be entered in the sum of $25,000 against Dr. Benaresh only. This was allocated as the jury had allocated it: $15,000 for the death action and $10,000 for the action for pain and suffering. We hold that the dismissal of the action against the Hospital and the direction that judgment be entered only against Benaresh for the sum of $25,000 was error. Here, as found by the jury, the defendants were joint tort-feasors. Accordingly, so far as concerns plaintiff, there can be no

apportionment of their responsibility. Each is responsible for the entire recovery *(Nelson v Haege,* 232 App Div 56; *Polsey v Waldorf-Astoria,* 216 App Div 86). While, as between defendants, the jury was free to apportion fault *(Dole v Dow Chem. Co.,* 30 NY2d 143), it could not affect the joint liability of both to plaintiff. Although the court could have corrected this situation *(Polsey v Waldorf-Astoria, supra),* or sent the jury back to return a verdict in conformity with his instructions, he did not do so. Indeed, he emphasized the jury's error by limiting the verdict to the proportion assessed against Benaresh without indicating whether he did so because he found the verdict excessive. More importantly, the holding that the Hospital was not responsible for the acts of Siegel, as a matter of law, was improper. It is true that ordinarily a hospital is answerable only for the acts of its employees and not for those of private attending physicians or surgeons. However, there may be circumstances under which liability may be imposed for independent contractors *(Mduba v Benedictine Hosp.,* 52 AD2d 450; see, also, *Felice v St. Agnes Hosp.,* 65 AD2d 388). The answer lies in the degree of control exercised by the hospital. Here, a fundamental factual issue is posed by plaintiff's claim that the deceased never retained Siegel to act as his attending physician and that Siegel was designated to act in that capacity by the chief of orthopedic service of the Hospital. Counterbalanced against this is the claim that the deceased signed an authorization pursuant to which Siegel received payment from the National Health Fund of the Union, albeit, it is contended, under questionable conditions. Hence, in his charge to the jury, the court should have separated Siegel from the regular Hospital personnel and properly instructed them of the circumstances under which the Hospital could be held responsible for his acts. We are not unaware that the failure of a party to object to a charge or to the refusal of a request to charge, may limit appellate review (CPLR 4017). This requirement was not here met. However, where the error is so fundamental as to preclude consideration of the central issue upon which the claim of liability is founded, the court may, in the interests of justice, proceed to review the issue even in the absence of objection or request *(Rodriguez v Cato,* 63 AD2d 922). Inasmuch as there must be a new trial, we call attention to two matters which, in all probability, will arise. Plaintiff requested a charge that the jury consider loss of consortium as an element of damage. In our decision in *Ventura v Consolidated Edison Co.* (65 AD2d 352), we held this to be proper. Inasmuch as this case was tried prior to *Ventura,* the trial court denied the request. It should be granted on retrial. Additionally, the record indicates that the action which arose by reason of the motorcycle accident was settled. Should there be a recovery against either or both defendants, such recovery must be reduced by the amount of the settlement. Concur—Fein, J. P., Sullivan, Bloom, Lane and Lupiano, JJ.