■ WILLIAM SCHMEIDER et al., Appellants, v MONTEFIORE HOSPITAL AND MEDICAL CENTER et al., Respondents, et al., Defendant.—Judgment, Supreme Court, Bronx County (Bernard H. Herman, J.), entered April 1, 1985, on a unanimous jury verdict in favor of defendants, affirmed, without costs or disbursements.

Upon review of the record, we find ample support for the jury verdict in favor of defendants in this medical malpractice action. The jury instructions, while hardly a model charge, do in their totality adequately set forth the sole basis for liability against Dr. Driscoll, namely, whether there was an error of judgment, amounting to malpractice, as a result of his decision to delay surgical intervention to close the rupture, based upon his opinion that the perforation might heal spontaneously, without any need to operate. Inasmuch as the jurors were instructed that this was the only issue to be submitted as to any malpractice by Dr. Driscoll, we disagree with the dissent's conclusion that the first interrogatory in the special verdict was improper. Thus, this interrogatory, which posed the question of whether Dr. Driscoll had committed malprac-

tice "in the medical and/or surgical treatment" rendered to the plaintiff, solely related to whether the doctor had negligently delayed the operation. As the court charged, this was "the only issue of alleged malpractice that I am submitting to you and that you are to consider and determine". Viewed in that context, the interrogatory was neither confusing nor improper.

We also disagree with the conclusion of our dissenting colleague that the trial court foreclosed plaintiff in the direct examination of his medical expert, Dr. Max Tesler, on the issue of delay. The bill of particulars does not include, expressly or otherwise, any malpractice claim which makes any reference to delay by Dr. Driscoll in performing surgery. Contrary to the dissent, the bill is not "broad enough" to encompass and apprise the defendants of this claim.

Nevertheless, in his direct examination, Dr. Tesler opined that the severity of the peritonitis did require a colostomy. Defendants' objection was overruled, the court permitting the expert to express his view on that issue. While the dissent recites a limited portion of the medical opinion in the trial transcript, Dr. Tesler, in his testimony immediately prior to the cited segment, did refer to the hospital records as disclosing that, although there were symptoms of peritonitis four hours after the polypectomy, an exploratory laparotomy was not performed until six hours later, at 8:00 P.M. The dissent refers to the plaintiff as having thereafter "dropped" the subject, but, as far as appears, this was a matter of strategy by experienced trial counsel who, again for strategic purposes, had apparently elected not to proceed against Dr. Zimetbaum, the doctor who performed the initial procedure to remove the polyps. In any event, the record discloses that Dr. Tesler did state his opinion that plaintiff needed a laparotomy and a colostomy because of the presence of peritonitis and, plainly, counsel's decision not to proceed further on direct examination was not the result of any ruling by the court.

Although the dissent concludes that the court reversed its position after both sides had rested, the record reflects the contrary, that on the issue of delay, the Trial Justice advised counsel, "I never ruled it was no longer in the case". Even assuming that the court did reverse itself, Dr. Tesler had already testified that, in his opinion, the operative procedure should have been performed sooner. In any event, since the issue of delay had not been raised in the bill of particulars or otherwise, this ruling, permitting the case to proceed to the jury on the issue, was favorable to the plaintiff and afforded

him greater latitude in making out a prima facie case against Dr. Driscoll than he was entitled to under the pleadings. While the dissent states it would have permitted plaintiff's attorney to proceed further in his examination, counsel intentionally chose not to do so. Concur—Kupferman, J. P., Ross, Carro and Kassal, JJ.

Wallach, J., dissents in a memorandum as follows: Because the erroneous rulings of the trial court in this medical malpractice action against Montefiore Hospital (Hospital) and Dr. William B. Driscoll, a surgeon employed on the Hospital staff, prevented a fair consideration by the jury of plaintiff's single viable claim, I would reverse and remand for a new trial.

On September 3, 1974, plaintiff William Schmeider, a 50-year-old New York City fireman on limited duty, was admitted to defendant Hospital by his personal physician, Dr. Huang, for removal of a cluster of five polyps located in his sigmoid colon some 25 millimeters above the rectum. The following day Dr. Huang introduced Mr. Schmeider to Dr. Marcel Zimetbaum, a gastroenterologist, who was retained by Dr. Huang for surgical removal of the polyps by colonoscopy and polypectomy. This procedure, performed on September 6, called for the insertion of a flexible tube known as a colonoscope into the anus upward to the situs of the polyps, and then with the patient awake but sedated, the snaring and removal of the polyps by electrocautery. Although there was some dispute at trial as to whether Dr. Zimetbaum negligently perforated the colonic tract, or whether this occurred spontaneously after the operative procedure was completed, this question became immaterial when both sides rested at the end of the testimony because Dr. Zimetbaum had not been joined as a party defendant to the action (although he appeared as a subpoenaed witness for plaintiff), and plaintiff failed entirely to support by any competent evidence his theory that Dr. Zimetbaum was employed (or held out to be employed) by the Hospital (*Rivera v Bronx-Lebanon Hosp. Center,* 70 AD2d 794; *cf. Mduba v Benedictine Hosp.,* 52 AD2d 450).

On the morning of September 7, Dr. Driscoll was called in for consultation by Dr. Zimetbaum, who suspected a perforation had occurred. The patient's X rays revealed the presence of free air in the peritoneal cavity which was indicative of a perforation. On a "fifteen percent chance" that the perforation might heal spontaneously without surgical intervention, Dr. Driscoll determined to delay an immediate attempt to close the rupture. Plaintiff's contention, vis-à-vis Dr. Driscoll and the Hospital, both on the trial and now on this appeal, is that

this delay constituted medical malpractice, and that when surgery was ultimately undertaken some eight hours later, the plaintiff was discovered to have suffered a significant laceration of the colon which required a colostomy. That procedure required severance of the colonic tract, creation of a fistula outside plaintiff's body with elimination of fecal matter in an outside bag, and a second rejoining operation some 11 weeks later. Plaintiff contends that this painful and embarrassing outcome could have been avoided had Dr. Driscoll acted promptly to suture the wound internally before peritonitis set in and developed during the period of delay.

The rulings of the trial court improperly prevented plaintiff from presenting this claim in comprehensible form to the jury. Plaintiff called as his expert Dr. Max A. Tesler, a qualified gastroenterologist, who was asked when, following the diagnosis of plaintiff's peritonitis, it should have been treated. Defendant's objection to this inquiry was sustained on the ground that such a claim was not sufficiently articulated in the bill of particulars. This restrictive ruling, going to the heart of plaintiff's case, was probably error *(Tetreault v State of New York,* 50 Misc 2d 170, 175; 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3041.22, at 30-758—30-759), and the language of the bill would seem broad enough to encompass this claim, but in view of subsequent developments, this question need not be confronted. It is true that shortly after this ruling, to which plaintiff vigorously excepted, Dr. Tesler, in a nonresponsive answer, adverted to the lapse of time before Dr. Driscoll's surgical intervention; however, this was promptly cut off by an objection. At this juncture, the court permitted Dr. Tesler to complete his answer as "part of his opinion". That completed answer was simply "that because of the severity of the peritonitis, it required a colostomy because you just can't repair a colon in the presence of peritonitis." One further repetitious question and answer ensued before the subject was dropped.

This truncated inquiry did not constitute any notice to counsel that the court had retreated from the substance of its earlier preclusive ruling. That is evident from proceedings at the presummation conference conducted by the court with counsel. At that time, the court announced that it would permit plaintiff's claim of negligent delay to be considered by the jury. Defense counsel argued vigorously for a mistrial on the ground that defendants had relied on the earlier ruling, and, for that reason only, had not cross-examined Dr. Tesler on the delay issue and had relinquished any inquiry of their

own expert, Dr. Gerald Salen, on that subject. While not adopting defendants' contentions on this score, the Trial Judge rhetorically inquired: "Have I not the right to reverse myself?"

That "reversal" of the court's position, coming as it did after both sides had completed their proofs, was of course favorable to plaintiff in the limited sense that it enabled him to survive total dismissal of his action. However, it was of small comfort. It came after plaintiff had been foreclosed from eliciting from Dr. Tesler any testimony that the delay in surgery, per se, was a departure from good and acceptable medical practice, and also that in the opinion of the expert the delay was the proximate cause of the injury plaintiff sustained.

The harm to the plaintiff was compounded by the form of the first interrogatory submitted by the court to the jury as part of a special verdict, to which the jury gave a unanimous negative answer, thus terminating their deliberations. The written question, to which plaintiff excepted, was: "Question 1 —In accordance with my charge to you, was the Defendant, William Driscoll, negligent and did he commit medical malpractice in the medical and/or surgical treatment he rendered to the Plaintiff, William Schmeider?"

This form of interrogatory improperly focused the attention of the jury upon the purported "treatment" rendered by Dr. Driscoll. Throughout the trial, plaintiff leveled no criticism whatever upon the "surgical" or for that matter, "medical" *treatment* of Dr. Driscoll; on the contrary, the sole attack was upon the *delay in commencing* that very surgical treatment. To submit an interrogatory standing so far removed from the genuine issue presented constitutes reversible error *(Caputo v Frankel,* 89 AD2d 595).

In view of the foregoing, it is unnecessary to consider plaintiff's contentions as to alleged deficiencies in the jury charge. I would simply note that, upon retrial, a closer adherence to the pattern jury format would avoid the prolixity and confusion which characterized this charge.

For the foregoing reasons, the judgment in favor of defendants should be reversed and a new trial ordered.