[51 NYS3d 507]

TYNIA SMITH, Respondent, v FRANCIS V. RUDOLPH et al., Appellants.

First Department, April 18, 2017

## APPEARANCES OF COUNSEL

*Lawrence Heisler*, Brooklyn (*Timothy J. O'Shaughnessy* of counsel), for appellants.

*Spiegel & Barbato, LLP*, Bronx (*Brian C. Mardon* of counsel), for respondent.

## OPINION OF THE COURT

RENWICK, J.

We all admire the work of an advocate who performs his or her duties with competence and diligence on behalf of a client. Competent and diligent representation, however, does not mean a lawyer should strive to "win" a case at all costs, if that means harming adversaries and their clients unreasonably and unnecessarily in the process and undermining the authority and integrity of the court. In this case, as fully explained below, defense counsel extended himself far beyond the permissible bounds of advocacy, on many occasions throughout the trial. Given defense counsel's woefully improper conduct, the trial court providently exercised its discretion in granting a new trial in the interest of justice.

Plaintiff Tynia Smith commenced this action to recover damages for personal injuries sustained during a pedestrian knock down accident. Plaintiff alleges that on the night of December 3, 2008, she was walking home with her coworker, after they had finished their evening shift at the Duane Reade Pharmacy located on Southern Boulevard, in the Bronx. The two women left the pharmacy and walked down Hunts Point Avenue until they reached the corner intersection of Bruckner Boulevard. They waited for the crosswalk light to be in their favor before beginning to cross.

The two young women were approximately half way across the street when a long articulated, New York City Transit Authority bus, operated by defendant Rudolph, made a left

turn from Hunts Point Avenue onto Bruckner Boulevard and struck Smith in her back and right shoulder area. Plaintiff claims that the bus came from behind and to her right, out of her line of sight. Plaintiff also claims that the bus driver did not honk or do anything else to warn her that the bus was coming into the intersection. The impact knocked plaintiff to the ground, and the bus continued to move forward.

As a result of this accident, plaintiff suffered injuries to several discs in her lumbar spine and neck as well as torn menisci in her right knee, as reported by her treating physicians. Immediately following the accident, she was taken by ambulance to the emergency room at Lincoln Hospital where she complained of pain in her neck, back and knee. She was examined and prescribed oxycodone. After being discharged home, plaintiff determined that the pain was unbearable, despite the medication. Her leg was buckling and unable to support her, so she went to Westchester Square Hospital a few days later, where she got a shot for pain and was advised to see an orthopedist. Plaintiff then saw Dr. Ehrlich, an orthopedist, who examined her and ordered MRIs of her neck, back, and knee. After the MRIs, Dr. Ehrlich diagnosed her with a torn meniscus in her right knee, and he performed knee surgery in March 2009. After surgery, plaintiff said she continued to experience knee pain.

With regard to her back injuries, plaintiff began treatment with Dr. Guy in February 2009. Dr. Guy saw plaintiff again in October 2009, and observed persistent pain and limitations in the movement of her knee, neck, and lower back, despite physical therapy and knee surgery. Because trigger point injections and over-the-counter medications did not alleviate her back pain, plaintiff saw several doctors for possible back surgery. The first doctor did not find any need for back surgery, but Dr. Davy did. Based on a diagnostic discogram conducted on the lower back in November 2010, Dr. Davy determined that plaintiff had fissures, or small tears, inside the linings of the discs at the L2 to S1 levels, and that these fissures caused chemical radiculitis, a condition where the body's natural inflammatory response attacks the nerves radiating from the afflicted disc levels.

On January 31, 2011, Dr. Davy performed a percutaneous discectomy to remove some of the nucleus pulposus at the L2 to S1 disc levels, to relieve the pressure in the discs, and to bring down the chemical radiculitis. Based on his treatment

and examinations, Dr. Davy concluded that plaintiff sustained multiple disc herniations from L2 through S1, L5 radicuolopathy, traumatic myofascial pain syndrome, and a meniscus tear as a result of the accident; that the injuries were significant and permanent; and that plaintiff would require further treatment.

At trial, the defense contested both liability and damages. The defense presented the testimony of the bus driver who testified that plaintiff and her friend entered the intersection when the pedestrian sign read "don't walk." The bus driver also claimed that plaintiff and her friend bumped into the bus and that the bus stopped at the moment of impact. In addition, the defense presented medical experts who opined that plaintiff's knee and back injuries resulting from the accident had been resolved by the end of 2009 and early 2010.

After trial, the jury found defendants 70% at fault, and plaintiff 30% at fault. With regard to the threshold question of serious injury, the jury found that plaintiff had sustained a "significant limitation" and 90/180-day injuries, but not a "permanent consequential limitation" injury. It awarded plaintiff $100,000 for past pain and suffering, $75,000 for past lost earnings, and $150,000 for past medical expenses, but zero dollars for future pain and suffering, future lost earnings, and future medical expenses. Thereafter, plaintiff moved for judgment notwithstanding the verdict on the issue of comparative negligence, and an additur on damages. Alternatively, she sought a new trial on the ground that "defense counsel engaged in repeated misconduct in front of the jury, thereby depriving plaintiff of a fair trial and the opportunity to properly present her case," and that the verdict was against the weight of the evidence.

Supreme Court granted plaintiff's motion for a new trial on the ground of improper conduct by defense counsel in the interest of justice. It denied the remaining requests for relief as moot. In ordering a new trial, the trial court concluded that defense counsel's conduct was "so extreme and pervasive as to make it inconceivable that it did not substantially affect the fairness of the trial" (*Smith v Rudolph*, 2015 NY Slip Op 32687[U], \*2 [Sup Ct, Bronx County 2015]). Also, such conduct "occurred in front of the jury, created a hostile atmosphere and persisted despite the court threatening to impose sanctions and to hold counsel in contempt" (*id.*).

The court then cited the multiple instances of defense counsel's misconduct: "frequent assertion[s] of personal knowl-

edge of facts in issue in violation of Rules of Professional Conduct, Rule 3.4 (d) (2)" (*id.*); his many speaking objections, with one of them flagrantly misstating the law; his motion for a mistrial twice in front of a jury; his unfair and false denigration of Dr. Davy as not being a "real surgeon" (*id.* at *4); his pattern of interrupting and speaking over the court despite the court's directions to stop; and his interruption of the trial by demanding that plaintiff's counsel move a chart she was showing to the jury to accommodate his refusal to move from his seat. The court further noted that, although not reflected in the record, defense counsel would use a "sneering, denigrating tone" while cross-examining Dr. Davy and plaintiff's other witnesses (*id.*). The court also noted as not reflected in the record the "tone of voice" directed at plaintiff's counsel, witnesses, and the court, or the "volume of his voice"; the court noted that it had admonished counsel "not to scream" on several occasions (*id.* *7). The court continued that not fully reflected in the record was the extent to which defense counsel would continue talking after being directed to stop.

The trial court clarified that where the transcript showed the court saying "stop" or "overruled" multiple times in succession, it was because defense counsel had continued to speak despite the court's direction (*id.*). The court concluded that the improper comments about Dr. Davy and Dr. Guy could not be deemed harmless, as the nature and extent of plaintiff's injuries were in significant dispute. It also determined that this case did not present a situation where there was overwhelming evidence in favor of defendants and where an isolated comment could be deemed harmless. In light of the foregoing, the court ordered a new trial in the interest of justice. This appeal ensued.

We now affirm. We are mindful that a counsel's objection to improper conduct, but failure to timely move for a mistrial before a jury returns a verdict, renders the error unpreserved and "may limit appellate review" (*Rivera v Bronx-Lebanon Hosp. Ctr.*, 70 AD2d 794, 796 [1st Dept 1979]). However, pursuant to CPLR 4404 (a), the court, upon the motion of any party or on its own initiative, may set aside a verdict "in the interest of justice." This "is predicated on the assumption that the Judge who presides at trial is in the best position to evaluate errors therein" (*Micallef v Miehle Co., Div. of Miehle-Goss Dexter*, 39 NY2d 376, 381 [1976]). In this regard, the trial court must decide, based on " 'common sense, experience and sense of fair-

ness,' " whether "it is likely that the verdict has been affected" by the alleged misconduct (id.; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4404.11). The trial court's determination is "discretionary in nature" and should not therefore be reversed absent an abuse or improper exercise of discretion (see Micallef at 381-382).

In this case, we find that the trial court properly considered plaintiff's posttrial motion and granted a new trial in the interest of justice (see CPLR 4404 [a]), as defense counsel's misconduct constituted fundamental error that deprived plaintiff of substantial justice and likely affected the verdict (Micallef, 39 NY2d at 381; Selzer v New York City Tr. Auth., 100 AD3d 157, 162 [1st Dept 2012]). On these facts, this was not a close question. The record shows a pervasive pattern of misconduct that permeated the month-long trial. As pointed out by the trial court, the more egregious examples include the denigration of Dr. Davy and Dr. Guy; counsel's unsupported assertions that doctors provided unnecessary treatment as part of a money-making conspiracy; and counsel's assertion of his personal view that plaintiff was pursuing the lawsuit only because she wanted to "take the rest of her life off."

Moreover, like the trial court, we are convinced that defense counsel's denigration of plaintiff's witnesses and unsupported inflammatory comments throughout trial "appear[ ] to have been calculated to influence the jury by considerations which were not legitimately before them, and cannot be dismissed as inadvertent, thoughtless or harmless" (Kohlmann v City of New York, 8 AD2d 598, 598 [1st Dept 1959]). Indeed as noted by the trial court, this was not a case of an isolated or inadvertent comment. Rather, the improprieties permeated the entire trial, in a continuing pattern of misconduct. The remarks were persistently made over the recurring and almost constant objection of counsel for plaintiff, and were repeated even though the trial court sustained the objections. Defense counsel even persisted after the trial court explicitly reprimanded him for his misconduct. Under the circumstances, counsel's persistent speaking objections, interruptions, "screaming," refusals to heed the court's admonishments, and use of a "sneering, denigrating" tone toward opposing counsel, plaintiff's witnesses, and the court, created a climate of hostility that so obscured the issues as to have made the trial unfair (cf. Duran v Ardee Assoc., 290 AD3d 366, 367 [1st Dept 2002]). The cumulative effect of defense counsel's remarks undoubtedly

served to leave the intended, indelible impression upon the minds of the jurors.

Significantly, as plaintiff correctly points out, defense counsel's conduct here is remarkably similar to the conduct of defense counsel in several cases which the Second Department found deprived the respective plaintiffs of a fair trial. For example, most recently, in *Maraviglia v Lokshina* (92 AD3d 924, 924-925 [2d Dept 2012]), the Second Department reversed and ordered a new trial "in light of the inappropriate cross-examination of the plaintiffs' witnesses, as well as the inflammatory and improper summation comments of counsel for the defendants." Specifically, the defendants' counsel "repeatedly denigrated the medical background of the . . . plaintiff's treating physician"; "made inflammatory remarks, including commenting during summation that the plaintiff's treating physician and the plaintiff were 'working the system' "; and improperly remarked that the plaintiff's treating physician "was the 'go-to' doctor in Suffolk County for patients who wished to stop working" (*id*. at 924-925).

> "[D]uring cross-examination of the plaintiffs' expert anesthesiologist, counsel for the defendants twice referred to the medical center where this doctor performed certain procedures as a 'parking lot,' even though the court had sustained the plaintiffs' objection to the first use of this reference. In addition, counsel persistently questioned the plaintiffs' expert about an investigation by the Department of Health . . . in the anesthesiology department at Long Island Jewish Medical Center, despite the expert's testimony that the investigation did not involve his practice, and the defendants' lack of any evidence to the contrary" (*id*. at 925).

Again, in *Rodriguez v City of New York* (67 AD3d 884 [2d Dept 2009]), the Second Department found that conduct remarkably similar to the instant case deprived the plaintiff of a fair trial. In that case, defense counsel argued during his opening statement that the plaintiff, who alleged that he was unable to work as a result of back injuries sustained from a fall, "was disabled due to 'lung problems,' sepsis, and his treatment with interferon for hepatitis C," despite absence of evidence on these health conditions (*id*. at 885). In his summation, defense counsel referred to the plaintiff's vocational economic analyst as " 'totally incredible' and a 'kind of tweaker' "; called another

economist "a liar"; and asserted that the plaintiff's chiropractor was " 'not being honest, is not being truthful' " (id.). Further, defense counsel stated, " 'It's not a lottery. It's not a game. It's not 'here's the American dream, come over here, fall off a scaffold, get a million dollars' " (id.). Although *Rodriguez* also involved improper comments by the trial judge, the Second Department held that the defense counsel's pattern of improper comments, alone, was sufficiently prejudicial and inflammatory to justify a new trial (id. at 886-887).

Likewise, in *Mercurio v Dunlop, Ltd.* (77 AD2d 647 [2d Dept 1980]), the Second Department found similar conduct to have deprived the plaintiffs of a fair trial. There, the defense counsel, among other things, made comments disparaging the plaintiff's attorney and accusing the attorney of misconduct, stated not simply that the plaintiff was an "interested witness" but that he was "asking for a large sum of money," and made two baseless motions for a mistrial (id. at 647). There were other instances of interruptions and argumentative objections. After the jury returned a verdict in favor of the defendants, the Second Department set aside the verdict and ordered a new trial, noting,

> "The record quite palpably reveals that the behavior of defense counsel during the trial created an atmosphere which deprived plaintiffs of a fair trial. What was involved was not an isolated remark during questioning or summation, but a seemingly continual and deliberate effort to divert the jurors' and the court's attention from the issues to be determined" (id. at 647).

Hence, as the foregoing discussion illustrates, it cannot be disputed that the defense counsel's obdurate and unrestrained conduct here is as equally egregious as the objectionable conduct that took place respectively in *Maraviglia, Rodriguez* and *Mercurio* and which the Second Department found deprived the respective plaintiffs of a fair trial. While a litigant has a right to expect his or her attorney to argue forcefully based upon the evidence, counsel went far beyond the facts and proffered his sentiment about plaintiff's motive for suing for her personal injuries. Counsel's personal beliefs regarding plaintiff's motive for suing had no place in his argument to the jury. In addition, his denigration of the treating physicians was a transgression that cannot be condoned. Such opinions were uncalled for and should not have been placed before the jury.

Moreover, defense counsel's expression of indignation and outrage could only serve to lead the jury away from a decision based upon a fair and impartial review of the evidence. Like the trial court, we are persuaded that, under the circumstances here, "the odoriferous taint spread by counsel's frequent and grave improprieties" tainted the jury and thus deprived plaintiff of a fair trial (*Commercial Credit Bus. Loans, Inc. v Martin*, 590 F Supp 328, 335 [ED Pa 1984]).

Finally, we reject defendants' argument that the fact that the jury found them 70% liable and plaintiff 30% liable indicated that the jury was capable of fairly evaluating the evidence and arguments, and therefore, plaintiff was not deprived of a fair trial. Although an apportionment of liability may support a finding of careful deliberation by the jury, we find that it is more likely that the jury reached a compromised verdict due to defense counsel's pervasive misconduct. Indeed, the evidence presented at trial did not overwhelmingly favor one side or another, but rather, presented a close case on the issues of liability and future damages. Based on the foregoing, we conclude that the trial court properly exercised its discretion under CPLR 4404 (a) in setting aside the jury verdict and granting a new trial.

Accordingly, the order of Supreme Court, Bronx County (Edgar G. Walker, J.), entered on or about May 13, 2015, which, to the extent appealed from as limited by the briefs, granted plaintiff's motion to set aside the jury verdict and order a new trial on the ground of defense counsel's misconduct, should be affirmed, without costs.

FRIEDMAN, J.P. (concurring). In view of the unusually egregious and pervasive misconduct of defense counsel at trial, as described in the majority opinion, I concur in the affirmance of the order granting plaintiff a new trial, notwithstanding her counsel's failure to move for an order declaring a mistrial before the verdict was rendered. I write separately, however, to note that our disposition of this appeal should not be construed as a retreat from the general principle that a party who fails to move for a mistrial before the case is submitted to the fact-finder, in spite of being aware of grounds for doing so, will not be granted relief on a motion to set aside a disappointing verdict on those grounds (*see Virgo v Bonavilla*, 49 NY2d 982, 984 [1980]; *Bertram v Columbia Presbyterian/N.Y. Presbyt. Hosp.*, 126 AD3d 473 [1st Dept 2015], *lv denied* 26 NY3d 905 [2015]; *Boyd v Manhattan & Bronx Surface Tr. Operating Auth.*,

79 AD3d 412, 413 [1st Dept 2010]; *Selzer v New York City Tr. Auth.*, 100 AD3d 157, 162 [1st Dept 2012]; *Califano v City of New York*, 212 AD2d 146, 153 [1st Dept 1995]; *Schein v Chest Serv. Co.*, 38 AD2d 929 [1st Dept 1972]). As the Court of Appeals has explained, "A party is not permitted to speculate upon a favorable verdict before asserting a claim that could properly be made during trial" (*Virgo*, 49 NY2d at 984).

It is only in the rare case where the misconduct of opposing counsel was so wrongful and persistent as to constitute a fundamental error and a gross injustice that a trial court may providently exercise its discretion under CPLR 4404 (a) to set aside the verdict on the grounds of such misconduct, in spite of the aggrieved party's failure to make a timely mistrial motion (*see Boyd*, 79 AD3d at 413; *Heller v Louis Provenzano, Inc.*, 257 AD2d 378, 379 [1st Dept 1999]). Although the instant appeal presents a close question, my ultimate conclusion is that this is one of those rare cases. I therefore concur in the affirmance of the order under review.

FEINMAN and GISCHE, JJ., concur with RENWICK, J.; FRIEDMAN, J.P., concurs in a separate opinion.

Order, Supreme Court, Bronx County, entered on or about May 13, 2015, affirmed, without costs.