Lisa I. v Manikas (2024 NY Slip Op 05164)

Lisa I. v Manikas

2024 NY Slip Op 05164

Decided on October 17, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 17, 2024

CV-23-0244 CV-23-1865
[*1]Lisa I., as Parent and Natural Guardian of N.Y., Appellant,
v
Allan Manikas et al., Respondents.

Calendar Date:September 5, 2024

Before:Egan Jr., J.P., Aarons, McShan and Mackey, JJ.

Cooper Erving & Savage LLP, Albany (Michael J. Hutter of Powers & Santola LLP, Albany, of counsel), for appellant.
Hagelin Spencer LLC, Buffalo (Megan F. Organek of counsel), for Allan Manikas and another, respondents.
Penino & Moynihan, White Plains (Edward J. Barbour of counsel), for Jordan Manikas, respondent.

Mackey, J.
Appeals (1) from an order of the Supreme Court (Brian D. Burns, J.), entered January 25, 2023 in Otsego County, which granted a motion by defendants Allan Manikas and Melissa Manikas to set aside the verdict, and (2) from an order of said court (Patrick J. O'Sullivan, J.), entered September 27, 2023 in Otsego County, which granted said defendants' motion to settle the record and strike a portion of the record on appeal.
In May 2016, plaintiff's 14-year-old daughter (hereinafter the child) attended a sleepover at a friend's house. The house was owned by the friend's parents, defendants Allan Manikas and Melissa Manikas (hereinafter collectively referred to as defendants). During the night, the child was allegedly raped by defendants' adult son. The child informed plaintiff of the incident, and plaintiff filed suit against the son for battery and intentional infliction of emotional distress and against defendants for premises liability negligence and negligent supervision.
After a nearly two-week trial, the jury unanimously found for plaintiff on all causes of action, awarding damages for past pain and suffering in the sum of $1,000,000 and for future pain and suffering in the sum of $1,000,000, over a period of five years. In determining fault, the jury apportioned 90% of the blame to defendants and 10% of the blame to the son. The jury also awarded punitive damages against the son in the amount of $750,000. Defendants thereafter moved pursuant to CPLR 4404 (a) to set the verdict aside because of alleged improper conduct by plaintiff's counsel during the course of the trial. Alternatively, defendants contended that the apportionment of blame was against the weight of the evidence. By order entered January 25, 2023, Supreme Court (Burns, J.) set aside the verdict in the interest of justice, finding that "plaintiff's counsel's pattern of improper conduct [was] so misleading, so pervasive, and at times so shocking, that despite the court's best efforts, the court cannot find that [defendants] received a fair trial." The court did not address whether the verdict was against the weight of the evidence, finding that issue to be academic. Plaintiff appeals.[FN1]
We agree with plaintiff that Supreme Court erred in setting aside the verdict. Because defendants did not request a mistrial before the jury rendered its verdict, their postverdict motion for an order setting it aside on the ground of misconduct by plaintiff's counsel should have been denied (see Virgo v Bonavilla, 49 NY2d 982, 983-984 [1980]; Bermingham v Atlantic Concrete Cutting, 159 AD3d 634, 635 [1st Dept 2018]; Bertram v Columbia Presbyterian/N.Y. Presbyt. Hosp., 126 AD3d 473, 473 [1st Dept 2015], lv denied 26 NY3d 905 [2015]; Selzer v New York City Tr. Auth., 100 AD3d 157, 162 [1st Dept 2012]; Boyd v Manhattan & Bronx Surface Tr. Operating Auth., 79 AD3d 412, 413 [1st Dept 2010]; Duran v Ardee Assoc., 290 AD2d 366, 366 [1st Dept 2002]). Upon our review of the record, we do not find this to be [*2]the rare case in which the alleged misconduct of counsel was so wrongful and pervasive as to warrant the exercise of Supreme Court's discretionary power to set aside the verdict in the interest of justice (see Yu v New York City Health & Hosps. Corp.,191 AD3d 1040, 1042-1043 [2d Dept 2021]; Kleiber v Fichtel, 172 AD3d 1048, 1050 [2d Dept 2019], lv dismissed 34 NY3d 962 [2019]; Boyd v Manhattan & Bronx Surface Tr. Operating Auth., 79 AD3d at 413-414; compare Smith v Rudolph, 151 AD3d 58, 63-64 [1st Dept 2017]; Heller v Louis Provenzano, Inc., 257 AD2d 378, 379 [1st Dept 1999]).
Defendants primarily premised their motion upon remarks made by plaintiff's counsel during the trial which, they allege, drew on racial stereotypes.[FN2] The comments that defendants contend are the most egregious occurred during the opening statement, in which plaintiff's counsel utilized an analogy to, according to him, explain the concepts of premises liability and negligent supervision. He told the jury: "I'll take for example, a homeowner who has a dog and the dog is known to bite people. How do you know that? Because other people have told you about that. So you know that that dog can bite, but you ignore that. You turn a blind eye to it. Instead you invite a 14-year-old child into your home and you know what you do, you bring that child to the danger. You bring a sleeping bag into your son's bedroom. Sorry. Talking about the dog. You bring that child into a room with a dog that you know bites. You know he has bitten people before. And what do you do after that, you walk away. You leave this child unattended, the 14-year-old child unattended with a dog that you know has bitten people before. And you go to sleep. And as a result, that dog seriously injuries [sic] that child."
This Court agrees that these comments were, at a minimum, ill-advised and had the potential to evoke racial stereotyping, even if that was not counsel's intent. However, neither defendants nor the son made any objection to the comments when they were made and chose not to move for a mistrial, which defendants conceded at oral argument was a strategic decision.[FN3] Significantly, the comments were never repeated at any time over the course of the trial.[FN4]
Defendants also identified instances where plaintiff's counsel continued to argue with Supreme Court after it had ruled on objections, asked questions about documents not in evidence, requested in front of the jury that Supreme Court qualify a witness as an expert, and asked the son about how many children he had. Additionally, plaintiff's counsel asked Allan Manikas during cross-examination, "this is now the third time you had a chance to get your story straight, isn't it?" The court sustained defendants' objection, only for plaintiff's counsel to ask, moments later, "[a]nd now you have [a] second bite of the apple to get your story straight, right?" The court again sustained defendants' counsel's objection and told plaintiff's counsel that the question [*3]was improper. Lastly, during summation, plaintiff's counsel asked the jury to "[t]hink about what party has been providing you with evidence[,] not only testimony, physical evidence. Who has been trying to put documents before you instead of reading from them? Who has been trying to give you all the documents necessary so you can come to your independent decision on what happened that day? You need to know who to believe." No objection to this statement was made at the time, but defendants' counsel did object during a subsequent conversation about final jury instructions. The court thereafter issued an instruction to the jury that "[n]o one is trying to hide anything from you in this case."
Although some of counsel's comments may have been objectionable, because defendants did not move for a mistrial their "argument respecting these remarks [was] not preserved" (Boyd v Manhattan & Bronx Surface Tr. Operating Auth., 79 AD3 at 413). Nor, in our opinion, have defendants shown this to be "the rare case in which the misconduct of counsel for the prevailing party was so wrongful and pervasive as to constitute a fundamental error and a gross injustice warranting the exercise of the trial court's discretionary power under CPLR 4404 (a) to set aside a verdict in the interest of justice" (Bermingham v Atlantic Concrete Cutting, 159 AD3d at 635). Accordingly, Supreme Court erred in granting defendants' posttrial motion to set aside the verdict in the interest of justice.
After concluding that a new trial was warranted because of plaintiff's counsel's conduct, Supreme Court found it unnecessary to assess whether the jury's apportionment of fault was against the weight of the evidence, so it did not decide that branch of defendants' motion. In this situation, and in the interest of judicial economy, we address that issue (see Telsaint v City of New York, 120 AD3d 794, 796 [2d Dept 2014]; Cusumano v City of New York, 104 AD3d 639, 641 [2d Dept 2013]).
A jury verdict should not be set aside as contrary to the weight of the evidence "unless the trial proof preponderated so heavily in favor of the losing party that the verdict could not have been reached on any fair interpretation of the evidence" (Fitzpatrick v Tvetenstrand,228 AD3d 7, 12 [3d Dept 2024] [internal quotation marks and citations omitted]; see Lolik v Big V Supermarkets, 86 NY2d 744, 745-746 [1995]; C.T. v Board of Educ. of S. Glens Falls Cent. Sch. Dist., 179 AD3d 1198, 1199 [3d Dept 2020]). "Showing that a different verdict would have been reasonable will not suffice, as the jury's verdict will be accorded deference if credible evidence exists to support its interpretation" (Wright v O'Leary, 201 AD3d 1280, 1281 [3d Dept 2022] [internal quotation marks and citations omitted], appeal dismissed 38 NY3d 972 [2022]; see Endemann v Dubois, 207 AD3d 1009, 1010 [3d Dept 2022], lv denied 39 NY3d 909 [2023]).
Contrary to defendants' contention, a negligent tortfeasor, such as defendants, may be apportioned [*4]a greater percentage of fault than the perpetrator, an intentional tortfeasor (see Nash v Port Auth. of N.Y. & N.J., 51 AD3d 337, 353-354 [1st Dept 2008], revd on other grounds 17 NY3d 428 [2011], cert denied 568 US 817 [2012]; see also Cabrera v Hirth, 8 AD3d 196, 197 [1st Dept 2004], lv dismissed 4 NY3d 794 [2005]; Siler v 146 Montague Assoc., 228 AD2d 33, 40-41 [2d Dept 1997], appeal dismissed 90 NY2d 927 [1997]). "Neither the magnitude of a defendant's negligence, nor its moral blameworthiness, nor the closeness of its causal relation to a plaintiff's harm necessarily diminishes to subordinate significance in the attribution of fault by reason of the circumstance that the harm was concurrently attributable to intentional conduct, even when the intentional conduct is particularly heinous. To the contrary, . . . the blameworthiness of negligence may actually be increased by the heinousness of the wrongdoing it directly and foreseeably facilitates" (Nash v Port Auth. of N.Y. & N.J., 51 AD3d at 354). Inasmuch as there was ample evidence that defendants knew their son posed a risk of harm to children prior to inviting the child upon their premises, including a report to defendants from an official at the son's school that he was a "predator," the jury could have reasonably determined that defendants' conduct was the greater cause of the child's injuries (see Ortiz v New York City Hous. Auth., 22 F Supp 2d 15, 33 [ED NY 1998], affd 198 F3d 234 [2d Cir 1999]; see also Shachnow v Myers, 229 AD2d 432, 433 [2d Dept 1996]). Thus, we find that the jury's apportionment of fault was not against the weight of the evidence.
In light of our determination, we need not reach the parties' remaining contentions.
Egan Jr., J.P., Aarons and McShan, JJ., concur.
ORDERED that the order entered January 25, 2023 is reversed, on the law, with costs, motion denied, verdict reinstated and matter remitted to the Supreme Court for entry of an appropriate judgment.
ORDERED that the order entered September 27, 2023 is affirmed, without costs.

Footnotes

Footnote 1: Plaintiff also appealed from Supreme Court's (O'Sullivan, J.) order granting defendants' motion to strike a portion of the record on appeal. Based on this Court's decision addressing a motion seeking similar relief, the law of the case doctrine precludes plaintiff from relitigating that issue (see Gulf Coast Bank & Trust Co. v Virgil Resort Funding Group, Inc., 201 AD3d 1086, 1088 [3d Dept 2022], lvs denied 38 NY3d 909 [2022], 38 NY3d 909 [2022]; Karol v Polsinello, 127 AD3d 1401, 1402 [3d Dept 2015];Briggs v Chapman, 53 AD3d 900, 901 [3d Dept 2008]).

Footnote 2: The son, about whom the comments were made, did not join in defendants' motion.

Footnote 3: The only mention of mistrial came after summations. At that time, in discussing the repercussions of a comment made by plaintiff's counsel concerning an exhibit, defendants' counsel stated, "that kind of a statement I think is close to a mistrial." He decided not to move for a mistrial, however, and instead proceed to verdict.
Footnote 4: After opening statements, the only use of the word "dog" during the trial pertains to whether defendants' family dog barked at all on the night in question — a reference that no one claims to have racial implications. The record also does not support Supreme Court's statement that "[p]laintiff's counsel repeatedly referred to [the son] as a dangerous animal." The record is simply devoid of any such references, let alone repeated references. A thorough search of the record shows that plaintiff's counsel never uttered the word "animal" at any time.