## Weinhardt v New York City Tr. Auth.

2024 NY Slip Op 34533(U)

December 27, 2024

Supreme Court, New York County

Docket Number: Index No. 452432/2016

Judge: Suzanne J. Adams

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. SUZANNE J. ADAMS                    PART          IAS MOTION 39

_Justice_

-----------------------------------------------------------------------X

NANCY A. WEINHARDT,                                   INDEX NO.        452432/2016

                              Plaintiff,             MOTION DATE        N/A

              - v -                                  MOTION SEQ. NO.     005

NEW YORK CITY TRANSIT AUTHORITY,
LUIS JIMENEZ and MICHAEL HERRON,                     **DECISION + ORDER ON
                                                            MOTION**
                              Defendants.

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 005) 195, 196, 197, 198,
199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219,
220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240
were read on this motion to/for                          SET ASIDE VERDICT              .

In this personal injury/negligence action, plaintiff Nancy A. Weinhardt (Weinhardt) moves

for an order pursuant to CPLR 4404(a) to set aside defendants' jury verdict as against the weight

of the evidence and/or in the interest of justice. Defendant Michael Herron (Herron) joins in

support of the motion. Defendants New York City Transit Authority (NYCTA) and Luis Jimenez

(Jimenez) (hereinafter, "defendants") oppose the motion. Upon the foregoing documents, and for

the reasons set forth hereinbelow, it is ordered that Weinhardt's motion is denied in its entirety.

Background

This matter arose from a vehicular collision that occurred on March 6, 2015, between an

automobile driven by Herron, in which Weinhardt was a passenger, and a NYCTA bus operated

by Jimenez. A jury trial held before the Hon. Laurence L. Love, JSC in May and June, 2023,

resulted in a defense jury verdict on June 2, 2023, that found Herron 100% at fault for the accident

and defendants 0% at fault.

1

## Legal Standard

Pursuant to CPLR 4404(a), the court may set aside a verdict or judgment entered after trial, and direct judgment in favor of the moving party or grant a new trial, where the verdict is contrary to the weight of the evidence or in the interest of justice. In order to find that a verdict is against the weight of the evidence, the court must determine that that "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [jurors] to the conclusion reached by the jury on the basis of the evidence presented at trial." *Cohen v. Hallmark Cards, Inc.*, 45 N.Y.2d 493, 499 (1978). Thus, if "it can be said that the evidence is such that it would not be utterly irrational for a jury to reach the result it has determined upon, and thus a valid question of fact does exist, the court may not conclude that the verdict is as a matter of law not supported by the evidence." (*Id.* at 499).

A jury verdict should not be set aside as against the weight of the evidence "unless the jury could not have reached its verdict on any fair interpretation of the evidence," and "[g]reat deference is accorded to the fact-finding function of the jury, and determinations regarding the credibility of witnesses are for the factfinders, who had the opportunity to see and hear the witnesses." *Desposito v. City of New York*, 55 A.D.3d 659, 660-61 (2nd Dep't 2008). The jury's resolution of disputed factual issues and inconsistencies in witnesses' testimonies is also entitled to deference. *Bykowsky v. Eskenazi*, 72 A.D.3d 590 (1st Dept 2010), *lv. denied* 16 N.Y.3d 701 (2011).

## Discussion

Weinhardt's first argument asserts that "[t]he verdict should be set aside as against the weight of the evidence where photographs of damage to Herron's vehicle weigh so heavily against [NYCTA] that the verdict could not have been reached on any fair interpretation of the evidence," citing *Weinstein v Ershowsky* (202 AD 44 [1st Dept 1922]). *See* NYSCEF document 197, ¶¶ 8-24.

2

[* 2]

She then states that "here photographic evidence . . . in combination with expert testimony, far outweighed the jury's verdict that only Herron was negligent." *Id.*, ¶ 13. Defendants respond that "the jury had a reasonable basis to reject [plaintiff's] claims as to how the accident happened since plaintiff had [testified as to] different versions of how the accident happened and where the accident happened," along with "Herron's admission to Police Officer Thompson that he was making a right turn," and "independent eyewitness testimony . . . that [Herron] made a right hand turn in front of the bus." *See* NYSCEF document 223, ¶ 60. Weinhardt's reply papers incorrectly assert that defendants failed to address her argument about the photographs. *See* NYSCEF document 240, ¶ 25.

The trial record clearly shows that the parties offered conflicting testimony as to the location and circumstances of the subject collision. *See* NYSCEF document 236. Of relevance to her first argument, Weinhardt also offered the expert testimony of forensic engineer/accident reconstruction specialist Donald Phillips (Phillips) regarding the post-collision photographs of Herron's car and the NYCTA bus. *Id.*, NYSCEF documents 201, 203. Defendants did not offer an expert witness of their own, but instead cross-examined Phillips about his report, his testimony and the photographs. *Id.* As noted, the jury subsequently accepted defendants' version of the accident and returned a verdict which found them 0% liable for negligence. As also noted, the law provides that it is the jury's role to evaluate and resolve all factual and credibility issues that arise from conflicting witness testimony, expert testimony and other evidence. *Rozon v Schottenstein*, 204 AD3d 94, 102-103 (internal citations omitted) (1st Dept 2022); *see also Figueroa v Mandel*, 136 AD3d 534, 535 (1st Dept 2016) ("[A] jury which had the opportunity to see and hear the witnesses and assess their credibility was entitled to evaluate plaintiff's testimony, reject it, and credit defendant's testimony in full, in reaching its verdict in favor of defendant."). Weinhardt's

[* 3]

first argument highlighted the value of Phillips's expert opinion regarding the photographs, but merely asserted that the jury's verdict was against the weight of this evidence without offering a rationale as to why. Weinhardt has thus failed to demonstrate that there was "no valid line of reasoning" by which the jury could have considered all of the evidence admitted at trial and chosen to accept defendants' version of event over her own. As a result, Weinhardt's first argument also fails to satisfy the criteria for vacatur set forth in CPLR 4404 (a), and the court accordingly rejects it.

Weinhardt's second argument asserts that "the police officer [i.e., P.O. Akema Thompson]'s testimony and other trial testimony establish the liability of [NYCTA] and is consistent with a 'PIT [(precision immobilization technique] maneuver.'" *See* NYSCEF document 197, ¶¶ 25-31. Defendants response again is that "the jury had a reasonable basis to reject [plaintiff's] claims as to how the accident happened since plaintiff had [testified as to] different versions of how the accident happened and where the accident happened," along with "Herron's admission to Police Officer Thompson that he was making a right turn," and "independent eyewitness testimony . . . that [Herron] made a right hand turn in front of the bus." *See* NYSCEF document 223, ¶ 60. Weinhardt's reply papers again incorrectly assert that defendants failed to address her "PIT maneuver" argument. *See* NYSCEF document 240, ¶ 26. Weinhardt's second argument fails for the same reason as her first one; i.e., it simply highlights the value of P.O. Thompson's testimony about PIT maneuvers, but then asserts that the jury's verdict was against the weight of this evidence without offering a rationale as to why. As noted, it is the jury's role to evaluate and resolve all factual and credibility issues at trial. *Rozon v Schottenstein*, 204 AD3d at 102-103 (internal citations omitted). Here, it did so in defendants' favor. The law does not require it to accept expert or police testimony without question or to accord it greater weight than other

4

[* 4]

evidence, but rather to consider all of the evidence presented and arrive at a "fair interpretation" of it. *See e.g., Angel R. v New York City Tr. Auth.*, 139 AD3d 590, 590 (1st Dept 2016) ("[w]hether a jury verdict should be set aside as contrary to the weight of the evidence does not involve a question of law, but rather requires a discretionary balancing of many factors"), *citing Cohen v Hallmark Cards*, 45 NY2d 493, 499 (1978). Because Weinhardt has failed to demonstrate that there was "no valid line of reasoning" by which the jury could have determined that defendants' testimony and evidence was more persuasive that P.O. Thompson's "PIT maneuver" testimony, she has not satisfied the criteria for vacatur set forth in CPLR 4404 (a). The court therefore rejects Weinhardt's second argument.

Weinhardt's third argument states that "the testimony of Nicholas Herron, a non-witness to the accident, does not and cannot establish that the defendants were free from liability." *See* NYSCEF document 197, ¶¶ 32-39. She particularly asserts that "when the Court takes into account the reliability of Nicholas, his background, and his confusion as to what he was told, it was obvious that he was not familiar with the facts and circumstances of this accident," and that "[c]ompounding his difficulties was the recent loss of his father." *Id.*, ¶ 32. However, Weinhardt offers no legal authority to support her apparent position that it would be permissible for the court to substitute its assessment of Nicholas Herron's credibility for the jury's. As the First Department holds, "[i]f the resolution of the case turns on the evaluation of conflicting testimony of expert witnesses, the resolution of such a conflict rests with the jury and not the court." *Rozon v Schottenstein*, 204 AD3d at 103, citing *McDermott v Coffee Beanery, Ltd.*, 9 AD3d at 207. Because it is contrary to the dictates of CPLR 4404 (a) and the caselaw interpreting it, the court therefore rejects Weinhardt's third argument.

5

Weinhardt's sixth and seventh arguments are directed at portions of Justice Love's charge to the jury. The sixth avers that "portions of the jury charge were inconsistent and confusing which mandate a new trial;" specifically, those which bore on the respective parties' alleged violations of sections of the Vehicle and Traffic Law (VTL). *See* NYSCEF document 197, ¶¶ 68-78. Weinhardt correctly notes that defendants failed to address this argument in their opposition papers. *Id.*, NYSCEF document 240, ¶ 30. However, there was no need for her to do so. The First Department holds that:

> "Where a party fails to object to errors in a verdict sheet, the charge becomes the law applicable to the determination of the case, and on appeal, this Court will review only if the error was 'fundamental' *(Aguilar v New York City Tr. Auth.*, 81 AD3d 509, 510 [1st Dept 2011]). We find that the alleged conflict between the jury charge and the verdict sheet was not fundamental since it did not confuse or create doubt as to the principle of law to be applied, or improperly shift fault, such that the 'jury was prevented from fairly considering the issues at trial' *(Curanovic v New York Cent. Mut. Fire Ins. Co.*, 22 AD3d 975, 977 [3d Dept 2005]; *Clark v Interlaken Owners*, 2 AD3d 338, 340 [1st Dept 2003])."

*Grace v New York City Tr. Auth.*, 123 AD3d 401, 401-402 (1st Dept 2014). Here, the trial record shows that Weinhardt failed to object to the VTL-related jury instructions. *Id.*, NYSCEF documents 204, 213, 236. It also shows that Justice Love quickly corrected himself when he inadvertently misspoke by instructing the jury to consider whether Herron, instead of defendants, had violated a section of the VTL which plaintiff had alleged defendants to have violated. *Id.*, NYSCEF document 204 at 676-681. The First Department has held that a litigant's claim that a trial court delivered a VTL charge "in a manner that was confusing or misleading to the jury" is a purely speculative assertion which will not justify relief under CPLR 4404 (a). *See Miller v Camelot Communications Group, Inc.*, 203 AD3d 628, 628 (1st Dept 2022). Weinhardt's assertion that Justice Love's quick correction of an inadvertent misstatement was "confusing or misleading" appears to be nothing but speculative. Thus, any alleged error in the portion of Justice Love's jury charge regarding alleged VTL violations was not "fundamental" and did not afford grounds for

6

[* 6]

relief under CPLR 4404 (a). Accordingly, the court rejects Weinhardt's sixth argument as belied by the record.

Weinhardt's seventh argument asserts that "the jury charge should not have included application of the emergency doctrine as there was evidence that Jimenez contributed to the accident and was not aware of any emergency situation." *See* NYSCEF document 197, ¶¶ 79-85. The record shows that plaintiff's counsel did object to the inclusion of an "emergency doctrine charge" at the pre-charge conference before Justice Love, and that Justice Love overruled his objection. *Id.*, NYSCEF document 213 at 612-613. The rule in the First Department is that:

> "It is well settled that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, the actor may not be found negligent if the actions are 'reasonably prudent' under the emergency circumstances with which he or she is confronted (*see Caristo v Sanzone*, 96 NY2d 172, 174–175 [2001]). We have repeatedly found the emergency doctrine to preclude liability for personal injuries when a bus driver's only option was to stop short (*see e.g. Brooks v New York City Tr. Auth.*, 19 AD3d 162, [1ˢᵗ Dept 2005]; *Hotkins v New York City Tr. Auth.*, 7 AD3d 474 [1ˢᵗ Dept 2004])."

*Edwards v New York City Tr. Auth.*, 37 AD3d 157, 158 (1ˢᵗ Dept 2007); *see also Neary v New York City Tr. Auth.*, 191 AD3d 508, 508 (1ˢᵗ Dept 2021). Plaintiff's counsel now avers that Jimenez testified "that he did not see Herron's car before the impact." *See* NYSCEF document 197, ¶ 80. However, having heard Jimenez's testimony himself, Justice Love specifically stated at the pre-charge conference that "I know that the defendant bus driver clearly testified from his version of events that the vehicle turned in front of him, that he had no opportunity to take any other action." *Id.*, NYSCEF document 213 at 612-613. In his current argument, plaintiff's counsel mischaracterizes Jimenez's testimony by focusing on a seemingly equivocal response that he gave during cross-examination to a question about when he first noticed Herron's vehicle. Counsel ignores the fact that Jimenez clarified his response on re-direct by asserting that he first noticed Herron's vehicle when it quickly and unexpectedly turned to the right in front of him as he was

7

[* 7]

moving the bus leftward away from a bus stop. *Id.*, NYSCEF document 200, at 130. Thus, it is clear that there was sufficient evidence in the record to warrant Justice Love's inclusion of an "emergency doctrine charge." It is notable that counsel did not pursue his objection to the "emergency doctrine charge" in his reply papers and, thus, may be deemed to have dropped it. In any case, the court rejects Weinhardt's seventh argument as belied by the record.

Weinhardt's eighth argument asserts that "the testimony of Jimenez established that he must bear some responsibility for the accident as he was negligent in failing to see Herron's vehicle and the jury's verdict of no liability is therefore against the weight of the evidence." *See* NYSCEF document 197, ¶¶ 86-98. She cites the Second Department's much quoted 1985 decision in *Nicastro v Park* (113 AD2d 129 [1d Dept 1985]) for the proposition that "this Court can set aside the Weinhardt verdict even though there was conflicting testimony." *Id.*, NYSCEF document 197, ¶ 88. Weinhardt then asserts that "the preponderance of the evidence established that Jimenez, at a minimum, contributed to the cause of the accident, thereby rendering the verdict of 0% against the weight of the evidence." *Id.* This argument misconceives the *Nicastro* holding.

In *Nicastro v Park*, the Second Department drew a distinction between decisions "that a jury verdict is not supported by sufficient evidence" (which result in directed verdicts) and decisions "setting aside a jury verdict as against the weight of the evidence" (which result in new trials). 113 AD2d at 187-188. It held that the former class of decisions require the trial court to determine, as a matter of law, that "no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial." 113 AD2d at 132, citing *Cohen v Hallmark Cards,* 45 NY2d at 498. The latter class of decisions require the trial court to conduct "a discretionary balancing of many factors" to determine whether "the jury could not have reached the verdict on any fair interpretation of the

8

[* 8]

evidence." 113 AD2d at 134, quoting *Delgado v. Board of Educ.*, 65 AD2d 547 (2d Dept 1978), *aff'd* 48 NY2d 643 (1979). Regarding the "fair interpretation standard," the Second Department admonished that:

> "particular deference has traditionally been accorded to jury verdicts in favor of defendants in tort cases because the clash of factual contentions is often sharper and simpler in those matters and *the jury need not find that a defendant has prevailed by a preponderance of the evidence but rather may simply conclude that the plaintiff has failed to meet the burden of proof requisite of establishing the defendant's culpability.*"

65 AD2d at 134 (internal citations omitted, emphasis added). The Court continued that:

> "At that point, the question is whether the result the jury reached is so contrary to the conclusion that might fairly have been reached on the basis of the evidence that the court should exercise its power to overturn the jury's determination. Upon appellate review of the exercise of that power, *the Judge's presence during the trial is a significant factor. Not only has the trial court heard and seen the witnesses testify, but it also has had the opportunity to observe courtroom events that might have influenced the jury's evaluation of the evidence while not at the same time achieving a magnitude that would warrant reversal under the interest of justice provision of CPLR 4404 (a).*"

65 AD2d at 134 (emphasis added). It is apparent that Weinhardt's reliance on *Nicastro* and its progeny is unavailing in this case for two reasons. First, Weinhardt's assertion that Jimenez's liability is supported by a "preponderance of the evidence" poses a question of law which *Nicastro* says is to be judged by the "no valid line of reasoning" standard. However, the caselaw that Weinhardt cites to support her argument was decided pursuant to the "fair interpretation of the evidence" standard and is therefore inapposite. Second, this action was tried by Justice Love, not this court. As a result, this court did not "hear or see the witnesses testify" or "have the opportunity to observe courtroom events that might have influenced the jury's evaluation of the evidence," which the Second Department specified as key elements among "a discretionary balancing of many factors." Instead, this court has only the trial record to refer to when deciding whether or not the jury's verdict resulted from a "fair interpretation of the evidence," and a close review of that record indicates that they did, and does not disclose any attendant "factors" that would warrant an

9

[* 9]

exercise of judicial discretion to set aside their verdict. Accordingly, the court rejects Weinhardt's eighth argument.

Weinhardt's ninth argument asserts that "the verdict regarding the apportionment of liability is against the weight of the evidence and must not be permitted to stand." *See* NYSCEF document 197, ¶¶ 99-107. In it, counsel makes the confusing assertion that "it would not be unreasonable for the trial judge to conclude that the evidence preponderated so heavily in Plaintiff's favor that the jury could not have found that JIMENEZ was not negligent on any fair interpretation of the evidence." *Id.*, ¶ 107. In any event, the argument fails for the same reasons discussed *supra*; i.e., it misconceives the *Nicastro* holding by conflating two standards of review, is based on inapposite caselaw, and asks the court to perform a discretionary act for which there is no apparent justification in the record. Therefore, the court also rejects Weinhardt's ninth argument.

Weinhardt also raises three arguments that the jury's verdict should be set aside "in the interest of justice." *See* NYSCEF document 197, ¶¶ 40-64, 65-67, 108-126. The Court of Appeals has held that:

> "Under CPLR 4404 (a), a trial court has the discretion to order a new trial 'in the interest of justice.' . . . In considering whether to exercise its discretionary power to order a new trial based on errors at trial, the court 'must decide whether substantial justice has been done, whether it is likely that the verdict has been affected . . . and 'must look to [its] own common sense, experience and sense of fairness rather than to precedents in arriving at a decision' (4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.11)."

*Lariviere v New York City Tr. Auth.*, 131 AD3d 1130, 1132 (2d Dept 2015), quoting *Micallef v Miehle Co., Div. of Miehle–Goss Dexter, Inc.*, 39 NY2d 376, 381 (1976). The First Department further observes that:

> "[. . .] pursuant to CPLR 4404(a), the court, upon the motion of any party or on its own initiative, may set aside a verdict 'in the interest of justice.' This 'is predicated on the assumption that the Judge who presides at trial is in the best position to evaluate errors

10

[* 10]

therein.' In this regard, the trial court must decide, based on 'common sense, experience and sense of fairness,' whether 'it is likely that the verdict has been affected' by the alleged misconduct. The trial court's determination is 'discretionary in nature' and should not therefore be reversed absent an abuse or improper exercise of discretion."

*Smith v Rudolph*, 151 AD3d 58, 62-63 (1st Dept 2017) (internal citations omitted). As noted earlier, it was Justice Love rather than this court who oversaw the trial of this action. As also noted, a thorough review of the trial transcripts and counsels' submissions does not disclose anything sufficiently egregious to warrant setting aside the jury's verdict in the interest of justice.

Weinhardt's fourth argument asserts that "the inflammatory remarks and misconduct of counsel for [defendants] in addressing the jury permeated the trial so as to create a climate which destroyed plaintiff's ability to obtain a fair trial." *See* NYSCEF document 197, ¶¶ 40-64. In *Yu v New York City Health & Hosps. Corp.* (191 AD3d 1040 [2d Dept 2021]), which also involved allegations of attorney misconduct as the reason for the defendant's request to set aside he jury's verdict in the interest of justice, the Second Department held as follows:

> "Here, we conclude that the Supreme Court improvidently exercised its discretion in ordering a new trial in the interest of justice based upon attorney misconduct. Some of the challenged conduct was improper, and we do not condone it (*see Lariviere v New York City Tr. Auth.*, 131 AD3d at 1132). However, 'where counsel, in summing up, exceeds the bounds of legal propriety, it is the duty of the opposing counsel to make a specific objection and for the court to rule on the objection, to direct the jury to disregard any improper remarks, and to admonish counsel from repetition of improper remarks' (*Kleiber v Fichtel*, 172 AD3d 1048, 1051 [2d Dept 2019]). Here, defense counsel did not object to the challenged remarks during summation or request a curative instruction, thus depriving the court of the opportunity to direct the jury to disregard improper remarks or give other curative instructions, and to avoid further error (*see Reilly v St. Charles Hosp. & Rehabilitation Ctr.*, 143 AD3d 692, 694 [2d Dept 2016]; *Frederic v City of New York*, 117 AD3d 899, 900 [2d Dept 2014]). 'Where no objection is interposed, a new trial may be directed only where the remarks are so prejudicial as to have caused a gross injustice, and where the comments are so pervasive, prejudicial, or inflammatory as to deprive a party of a fair trial' (*Kleiber v Fichtel*, 172 AD3d at 1052). The misconduct of the plaintiff's counsel in the instant case was not so pervasive or prejudicial as to have deprived the defendant of a fair trial, or to have affected the verdict, particularly in light of the strength of the plaintiff's case (*see id.*; *Lariviere v New York City Tr. Auth.*, 131 A.D.3d at 113; *Davidov v Fieldman*, 55 AD3d 779, 780 [2d Dept 2008]). Accordingly,

11

[* 11]

we deny that branch of the defendant's motion pursuant to CPLR 4404 (a) which was to set aside the verdict and for a new trial in the interest of justice, and reinstate the verdict."

191 AD3d at 1042-1043. Here, Weinhardt identifies several instances where defendants' counsel made allegedly inflammatory statements during her opening statement and summation and where she engaged in allegedly improper questioning during her direct examination of Jimenez and her cross examination of Herron. *See* NYSCEF document 197, ¶¶ 40-64. Defendants counsel responds by citing *Selzer v New York City Tr. Auth.* (100 AD3d 157, 163 [1st Dept 2012]) for the proposition that "counsel is afforded wide latitude in summation to characterize and comment on the evidence." *Id.*, NYSCEF document 223, ¶ 67. The trial record shows that defense counsel's opening and closing statements both included harsh comments accusing Weinhardt of dishonesty and questioning her motives for commencing this action. It also shows that Justice Love sustained objections to these comments and that plaintiff's counsel did not move for a mistrial at the time they were made. With respect to counsel's trial conduct, Weinhardt objects that defendant's counsel sought to improperly inflate Jimenez's credibility by characterizing him as a "home-town hero" and to challenge Herron's credibility by questioning him closely about perceived inconsistencies in his testimony. Although these appear to be minor points, Justice Love sustained objections to some of these questions. In the aggregate, the trial record shows that defendants' counsel's conduct was intermittently contentious (particularly at opening and closing) but that while questioning witnesses she did not repeatedly or continuously disregard Justice Love's instructions so as to attempt to prejudice the jury with demonstrably false statements, innuendo or egregious mischaracterizations. Where counsel's statements were inflammatory or otherwise improper, Justice Love admonished her with corrective rulings, and did not allow her to engage in an ongoing course of conduct capable of unduly "prejudicing" the jury's deliberations. Where an attorney's conduct is improper but neither "egregious" nor "pervasive," setting aside a jury verdict

12

is not warranted. *See e.g., Matter of New York City Asbestos Litig.*, 224 AD3d 597, 599 (1st Dept 2024); *Lariviere v New York City Tr. Auth.*, 131 AD3d at 1132. Here, it was neither "egregious" nor "pervasive." Therefore, the court rejects Weinhardt's fourth "interest of justice" argument.

Weinhardt's fifth argument asserts that "the consequences of [defendants' counsel]'s conduct require[s] a new trial in the interests of justice." *See* NYSCEF document 197, ¶¶ 65-67. This argument merely asserts that defendants' counsel's "pervasive misconduct" compromised the fairness of the trial by repeatedly "leading the jurors astray from the evidence," and likely "affected the outcome of the trial." *Id.* This argument fails for the same reasons just discussed; i.e., it is belied by the record which does not show that counsel's behavior was either "egregious" or "pervasive." Therefore, the court also rejects Weinhardt's fifth "interest of justice" argument.

Weinhardt's tenth argument asserts that "the jury verdict should be set aside in the interests of justice due to defense counsel's repeated improper conduct which deprived plaintiff of a fair trial." *See* NYSCEF document 197, ¶¶ 108-126. This argument merely restates the allegations set forth in counsel's fourth argument and fails for the same reasons as were discussed *supra*. Therefore, the court also rejects Weinhardt's tenth "interest of justice" argument.

Weinhardt's final argument asserts that Justice Love committed reversible error mandating relief under CPLR 4404(a) because "the police accident report should have been excluded or appropriately redacted and the questions based thereon by counsel for Jimenez were inappropriate." *See* NYSCEF document 197, ¶¶ 127-133. It is not clear what portion of CPLR 4404(a) addresses this argument to. However, it too appears to be belied by the record. Counsel himself states that he objected to the admission of the subject police report and notes that Justice Love ruled on his objection to admit the report in redacted form. Counsel did not object to that ruling at that time. Therefore, it would be improper for the court to entertain his objection now.

13

[* 13]

*Yu v New York City Health & Hosps. Corp.*, 191 AD3d at 1042-1043.  Accordingly, the court rejects Weinhardt's eleventh argument.

Conclusion

Accordingly, it is hereby

ORDERED that plaintiff Weinhardt's motion is denied in its entirety.

This constitutes the decision and order of the court.

| 12/27/2024 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | SUZANNE J. ADAMS, J.S.C. | |
| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | | |
| | [ ] GRANTED | [X] DENIED | [ ] GRANTED IN PART | [ ] OTHER | |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE | |

14

[* 14]